[No. 17407.  Department Two.  April 27, 1923.]

JOHN ·S. VEITCH, *Respondent,* v. RALPH M. McCULLOUGH *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (80)—EMPLOYEES—REMOVAL—POWERS OF CIVIL SERVICE COMMISSION—INJUNCTION. Where a municipal civil service commission has authority to make rules to govern appointments and to inquire into the standing of any employee, and promulgated a rule authorizing the removal from the eligible list of an applicant for false statements in any application or examination, equity will not enjoin steps by the commission which may lead to the removal of a police officer who obtained his position by false statements.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered February 1, 1922, upon findings in favor of the plaintiff, in an action to

[1] Reported in 214 Pac. 631.

enjoin the removal of a civil service employee, tried to the court. Reversed.

*Walter F. Meier* and *Frank M. Preston,* for appellants.

*Stephen V. Carey,* for respondent.

FULLERTON, J.—The respondent, John S. Veitch, is a member of the police force of the city of Seattle, having been appointed to the position on April 21, 1910. The position is within the classified civil service of the city and appointments thereto are regulated by the city charter and the rules of the civil service commission created thereby. Among these regulations is the requirement that all applicants for positions under the classified civil service shall be subjected to examination as to their qualifications and fitness for the position in which they desire employment, which examinations shall be public and open to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character; and, with special reference to appointments to the police force, one of the limitations prescribed is that the applicant shall be between the ages of twenty-three and thirty-eight years.

At the time of the respondent's appointment, applicants for positions within the classified civil service were required to make their applications by verified petition, blank forms for which were furnished the applicants, and were required to make answer to certain questions printed thereon. The respondent made application on such a blank form, and to the question, "What is the date of your birth?" answered "18 day of Feb., 1875," and to the question, "Where were you born?" answered, "Waddington, N. Y." The ques-

tions on the form were preceded by the following state-
ment, "As part of my application, I hereby declare
the answers to the following questions to be true and
·in my own handwriting." At the foot of the applica-
tion was the usual form of jurat, in which the applicant
swore that the answers made were true and that they
were in his handwriting.

On May 10, 1915, the respondent made application
to the United States district court of the western dis-
trict of Washington to be naturalized as a citizen of
the United States. This application was also made by
a duly verified petition. In it the applicant swore that
he was born on February 18, 1867, at Winchester, On-
tario, Canada; that he emigrated to the United States
in 1895, and that on October 24, 1896, he declared his
intention to become a citizen of the United States at
Minneapolis, Minnesota, before the United States dis-
trict court of the fourth judicial district. He also made
oath that he was married in Canada; that he had two
children, and that the eldest of whom was born at
Shoal Lake, in Canada, on April 16, 1892. This appli-
cation came on to be heard before the United States
district court in which it was made on August 27, 1915,
and was denied with prejudice, "It appearing," as
the order of the court recites, "that petitioner had
registered for each annual election since 1910 as an
elector born in the state of New York, and having made
application under oath for public positions, claiming
to have been born in the state of New York, and held
such positions under such representations and state-
ments."

Sometime in the early part of the year 1921, com-
plaint was made to the civil service commission that
individuals who were not citizens were being employed
in the police department, evidently specifically naming

the respondent and one Samuel J. Grady. Investigation disclosed matters which led the commission to believe that the respondent had made false statements with respect to his age and place of birth when applying for the position of police officer, and they refused to approve the payroll containing his name as a police officer, and he was temporarily suspended by the officer having the power of appointment. Later on the respondent appeared before the commission by counsel, and admitted making a false statement concerning his place of birth in his application for the position, but contended that he was a citizen of the United States by reason of the fact that his father was born within the United States, and had never renounced his citizenship, and that his statement concerning the date of his birth was true. The commission took the opinion of the corporation counsel on the question whether the facts stated by the respondent, if true, would entitle him to claim citizenship in the United States, and on receiving an affirmative answer, directed that he be reinstated. They, however, declined to accept his naked statements as proving the fact and fixed a time in the future within which he could furnish corroborative evidence. This time was twice extended, but before the expiration of the last extension, the respondent, without submitting any corroborative proof, began the present action in equity to restrain the commission from further proceeding in the matter. Issue was taken on the allegations of his complaint and a trial had, at the conclusion of which a permanent injunction was granted, from which the defendants appeal.

The trial court, after finding that the respondent had been regularly appointed to the police force after satisfactorily passing the examinations touching his qualifications, found that the respondent was a citizen of

the United States at the time of his appointment, and further found that the civil service commission were acting "without jurisdiction in the premises, and were threatening to make an order permanently removing the plaintiff from his position as a police officer," and that the chief of police "was threatening to comply with such unlawful order or demand if made." It also found that the respondent was the son of Samuel Veitch, who was born at or near Waddington, in the state of New York; that the father removed to Canada, was there married; that the respondent was the fruit of such marriage; that the father "never relinquished or surrendered his American citizenship," and that the respondent removed to the United States before he reached the age of majority and has continuously maintained his legal residence within the United States since that time, and for these reasons concluded that the respondent was entitled to a permanent injunction.

With the court's findings and with its conclusion, we are unable to agree. The city charter of the city of Seattle creates a civil service commission and empowers the commission so created to classify all the offices and places of employment in the city. It further empowers the commission to make rules to carry out the purposes of the provisions of the charter, and provides that no appointment to any office or place shall be made except under and in accordance with such rules. The charter further provides:

"The commission shall investigate the enforcement of this article and of its rules and the action of the examiners herein provided for, and the conduct and action of the appointees in the classified service, and may inquire as to the nature, tenure and compensation of all offices and places in the public service. In the course of such investigation each commissioner shall

have the power to administer oaths and the commission shall have the power to require the attendance and testimony of any city officer or employe or other person, and the production of books and papers relevant to such investigation.''

Among the rules promulgated by the commission is the following:

''Fraudulent conduct or false statements by an applicant or by others with his connivance in any application or examination shall be deemed cause for the exclusion of such applicant from any examination or for removal of his name from the eligible register or for discharge from the service after appointment, provided the name of no person shall be removed from a list of eligibles nor shall any person be dismissed from the service under this section without first having an opportunity to be heard in his own behalf.''

We are clear that there is here granted to the civil service commission ample authority to inquire into the standing of any employee on the civil service list, and authority to inquire whether any such officer has made false statements for the purpose of obtaining an appointment thereunder. The commission possibly does not have power in itself to remove a police officer, but it could make the results of its investigations known to the authority having such power, leaving it to that authority to take such action as it deemed advisable, and could rightfully refuse to approve the payroll in so far as it directed payment to anyone not entitled to employment by the city. This, as we read the record, is all that the commission was purposing to do, and plainly it was error on the part of the court to enjoin them from so doing. As to the chief of police, who has the power of removal, there is no evidence as to what his action would be should the commission recom-

mend the respondent's removal, and as to him we find
no cause for the injunctive relief entered.

But we think there are other and stronger reasons
for denying the respondent relief. The trial court
should not have overlooked the respondent's many
manifestly false statements. As we have heretofore
shown, the respondent, in his application for a position
on the police force, swore that he was born in the state
of New York. On the trial he admitted this sworn
statement to be false, and no palliation or excuse for it
is made or attempted. He also swore in the same ap-
plication, and swore while giving his testimony in the
present trial, that he was born on February 18, 1875.
In our opinion, the record all but conclusively shows
that these statements were likewise false. As we have
shown, it is contradictory of his sworn statement made
in his declaration of intention to become a citizen of the
United States, and contradictory of his subsequent
sworn statement made when he applied for final citi-
zenship before the United States district court. More-
over, in January, 1910, the month preceding the month
when he made his application for a position on the
police force, and when it is legitimate to presume the
age limits requisite to such an appointment were un-
known to him, he registered as an elector in King
county, giving his age as forty-three, which would cor-
respond with a birth date of 1867. In later registra-
tions, after he had applied for and had been appointed
to a position on the police force, he gave his age so as
to correspond with a birth date of 1875. The deposi-
tion of his mother, then a resident of Canada, was
taken and read in his behalf in the present proceeding.
In her testimony she states on oath that the respondent
was born on February 18, 1867. In his application for
admission to citizenship made to the district court be-

fore mentioned, he gave the date of the birth of his eldest child as of April 16, 1892. If this statement and his present statement as to his age are both true, he was of the age of seventeen years and two months when this child was born. It was shown, moreover, that the respondent had registered annually as a qualified elector between the years 1910 and 1915, and that at each recurring registration he made the now admittedly false statement that his place of birth was New York. And what is more, he was questioned concerning this matter when on the witness stand prior to the introduction of the official record, and hid behind the non-committal answer, too often the resort of a false witness, of, "I don't remember."

But the record need not be further pursued. It is replete with evidence that the respondent procured his position by fraud and false swearing, and seeks to retain it by similar practices. It is needless to say that equity will not lend its strong arm under such circumstances to aid him in his desires.

The judgment is reversed, and the cause remanded with instructions to dismiss.

MAIN, C. J., TOLMAN, and MACKINTOSH, JJ., concur.

PARKER, J., (concurring)—I concur in the result reached in the foregoing opinion, solely upon the first ground of reversal stated therein. I do not think we are called upon to express any opinion upon the stated second ground of reversal; to wit, the stated "other and stronger reasons for denying the respondent relief"; for, to my mind, that deals wholly with the merits of the question, as to which the city authorities administering the civil service charter provisions of the city of Seattle are the sole and exclusive judges. When the court is advised by the record that the city

authorities have not exceeded their jurisdiction, as I think it is advised by this record, it has no rightful concern as to whether or not the çity authorities have decided the question correctly upon the merits.